IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CATHERINE ROMERO C.,

        Plaintiff,

   v.                                      Civil Action No.
                                             5:23-cv-750 (DEP)

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OFFICE OF OSTERHOURT                      HANNALORE B. MERRITT, ESQ.
BERGER DISABILITY LAW                     and ERIN DUFFY, ESQ.
521 Cedar Way, Suite 200
Oakmont, PA 15139

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    HEETANO SHAMSOONDAR, ESQ.
OFFICE OF GENERAL COUNSEL                 and JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# ORDER

     Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on September 5, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

    2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    September 23, 2024
            Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CATHERINE R.C.,
                                              Plaintiff,

-v-                                           5:23-CV-750

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
------------------------------------------------------------x
```

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
September 5, 2024
100 South Clinton Street, Syracuse, NY 13261


For the Plaintiff:

    OSTERHOUT DISIBILITY LAW
    521 Cedar Way, Suite 200
    Oakmont, Pennsylvania 15139
    BY:  **HANNALORE B. MERRITT, ESQ.**
          **ERIN A. DUFFY, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    6401 Security Boulevard
    Baltimore, Maryland 21235
    BY:  **JASON PECK, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

Case 5:23-cv-00750-DEP   Document 22   Filed 09/23/24   Page 5 of 17

CATHERINE R.C. v. SOCIAL SECURITY                                    2

1              (The Court and all parties present by telephone.
2    Time noted:  2:06 p.m.)
3              THE COURT:  Let me begin by thanking both of you for
4    excellent presentations.  I've enjoyed working with you.
5              Before we address the merits of the matter, I wanted
6    to broach the question of consent.  When this case was filed, it
7    was assigned to one of my colleague magistrate judges, Christian
8    F. Hummel, and the consent form that was signed by the plaintiff
9    or plaintiff's counsel, actually, at Docket No. 5 consents to
10   Magistrate Judge Hummel's jurisdiction.  When the matter was
11   transferred to me, there was a notation on the docket that any
12   request to withdraw consent should be filed within seven days.
13   There was none filed, but I wanted to confirm with plaintiff's
14   counsel:  Do you consent to my deciding this case as opposed to
15   issuing a report and recommendation to a district judge?
16             MS. DUFFY:  Yes, your Honor, plaintiff consents.
17             THE COURT:  Very good.  Thank you.
18             Plaintiff has commenced this proceeding pursuant to
19   42, United States Code, Section 405(g) to challenge an adverse
20   determination by the Commissioner of Social Security finding
21   that she was not eligible for the benefits for which she
22   applied.
23             The background is as follows:  Plaintiff was born in
24   September of 1966 and is currently 58 years of age.  She was
25   53 years old at the alleged onset of disability on August 15,

HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
(315) 234-8545

1   2019.  Plaintiff lives in Syracuse with a grandson.  She's 5'6"
2   in height and weighs 230 pounds.  She apparently, although
3   there's some equivocation, received a GED or a high school
4   diploma.  At 458, it suggests that it was a GED.  While in
5   school, she was in regular classes.  She also attended two years
6   of college.  Plaintiff is left hand dominant.
7            Plaintiff stopped working in August of 2019.  She
8   held various positions while working.  She was a customer
9   representative, an appointment clerk, and worked for a medical
10  answering service.  She was a janitor.  She was a waitress.  She
11  was a retail sales clerk and a room service attendant.  She is
12  currently working part-time 4 to 15 hours per week preparing
13  individuals to take examinations.  That appears at page 36 of
14  the Administrative Transcript.
15           Physically, plaintiff suffers from several
16  impairments, including psoriasis; psoriatic arthritis; joint
17  pain in the shoulder, neck, and back; bilateral knee pain;
18  obesity; hand pain; hypertension, which is controlled by
19  medications; and hyperlipidemia.
20           Mentally, plaintiff suffers from depression and
21  anxiety, however, she has not undergone any psychiatric
22  hospitalization or outpatient treatment.  Her mental condition
23  is addressed through medications prescribed by her primary
24  provider.
25           In terms of activities of daily living -- and these

1    come from 460 and 465 of the Administrative Transcript and other
2    locations, as well -- plaintiff can cook, clean, take care of
3    her grooming.  She does laundry.  She shops.  She can manage
4    money.  She drives.  She watches television and listens to the
5    radio.  She reads and she socializes with friends.  Plaintiff is
6    a former smoker.
7            Procedurally, plaintiff applied for Title II benefits
8    on January 27, 2021, alleging an onset date of August 15, 2019.
9    At page 272, she claimed disability based on arthritis; high
10   cholesterol; degenerative joint decrease; anxiety; high blood
11   pressure; Type II diabetes; unable to sit, stand, or walk long;
12   constant joint pain; fatigue; and weakness.
13           A hearing was conducted on August 19, 2022, by
14   Administrative Law Judge Jeremy Eldred, at which a vocational
15   expert, as well as the plaintiff, testified.  ALJ Eldred issued
16   an unfavorable decision on September 12, 2022.  That became a
17   final determination of the agency on April 25, 2023, when the
18   Social Security Administration Appeals Council denied
19   plaintiff's application for review.  This action was commenced
20   on June 20, 2023, and is timely.
21           In his decision, Administrative Law Judge Eldred
22   applied the familiar five-step sequential test for determining
23   disability.  He first noted that plaintiff's last insured status
24   will occur on December 31, 2025.  At step one, ALJ Eldred
25   concluded that plaintiff has not engaged in substantial gainful

1   activity since August 15, 2019, but did acknowledge plaintiff's

2   limited work since the filing of her application.

3            At step two, ALJ Eldred concluded that plaintiff does

4   suffer from severe impairments that impose more than minimal

5   limitations on her ability to perform work functions, including

6   psoriatic arthritis, psoriasis, osteoarthritis of the left knee,

7   degenerative changes of the right knee, and obesity.

8            At step three, the ALJ concluded that plaintiff's

9   conditions do not meet or medically equal any of the listed

10  presumptively disabling conditions set forth in the

11  Commissioner's regulations.  The Administrative Law Judge next

12  surveyed the entire record and concluded that plaintiff is

13  capable of performing light work, notwithstanding her

14  impairments, except she can stoop or crouch no more than

15  frequently and can climb, kneel, or crawl no more than

16  occasionally.

17           Applying that RFC, or residual functional capacity,

18  at step four, the Administrative Law Judge concluded that

19  plaintiff is capable of performing her past relevant work as an

20  appointment clerk based on the testimony of a vocational expert.

21  The ALJ therefore concluded that plaintiff was not disabled at

22  the relevant times.

23           As we have discussed, and as the parties know, my

24  role is limited to determining whether correct legal principles

25  were applied and the resulting determination is supported by

1  substantial evidence.  It is an extremely deferential standard.

2  It is more limiting than the clearly erroneous standard, as the

3  Second Circuit noted in *Brault v. Social Security Administration*

4  *Commissioner*, 683 F.3d 443, Second Circuit, 2012.  As the Second

5  Circuit noted, this standard means that once an ALJ finds a

6  fact, that fact can be rejected by the Court only if a

7  reasonable factfinder would have to conclude otherwise.  The

8  standard was more recently reiterated in *Schillo v. Kijakazi*, 31

9  F.4d 64, 2022.

10            In this case, plaintiff raises two contentions

11 essentially.  One, the failure to include manipulative

12 limitations in the RFC, and woven into that is the contention

13 that carpal tunnel syndrome at step two should have been

14 determined to be a severe medically determinable impairment.

15 The second point is the argument that the Administrative Law

16 Judge committed error when evaluating plaintiff's symptoms.

17            Turning first to manipulative limitations, this

18 implicates the RFC assessment which represents a finding of the

19 range of tasks a claimant is capable of performing

20 notwithstanding his or her impairments, 20 C.F.R. Section

21 404.1545(a), *Tankisi v. Commissioner of Social Security*, 521 F.

22 App'x 29, Second Circuit, 2013.  This means that an RFC

23 represents a claimant's maximum ability to perform sustained

24 work activities in an ordinary setting on a regular and

25 continuing basis, meaning eight hours a day for five days a

1  week, or an equivalent schedule, *Tankisi,* 521 F. App'x, at 33.

2  An RFC determination is informed by consideration of a

3  claimant's physical and mental abilities, symptomology, and

4  other limitations that could interfere with work activities on a

5  regular and continuing basis, as well as all of the relevant

6  medical and other evidence.

7           As a backdrop, when evaluating plaintiff's arguments,

8  the Court notes that, of course, it is plaintiff's burden

9  through step four to establish not only impairments, but

10 limitations caused by those impairments.  Plaintiff's argument

11 is based on the Administrative Law Judge's rejection of opinions

12 of Dr. Figueroa and Dr. Seok.  When it comes to evaluating

13 medical opinions, under the new regulations applicable to

14 applications filed after March 27, 2017, the Commissioner no

15 longer defers or gives any specific evidentiary weight,

16 including controlling weight, to any medical opinions, but

17 rather must consider whether those opinions are persuasive by

18 primarily considering whether they are supported by and

19 consistent with the record in the case, 20 C.F.R. Section

20 404.1520(c).  And then an ALJ must articulate in his or her

21 determination how persuasive he or she finds all of the medical

22 opinions and explain how the factors of supportability and

23 consistency of those opinions was considered.

24          The focus, of course, is on the three opinions in the

25 record that speak to manipulative limitations.  I note that

1   there's no medical source statement from any treating source,

2   including notably plaintiff's treating rheumatologist.

3            Dr. Seok issued a prior administrative medical

4   finding containing opinions on August 18, 2021.  That appears at

5   pages 74 to 87 of the Administrative Transcript.  Dr. Seok did

6   find at page 84 that the plaintiff experiences manipulative

7   limitations, found no limit in reaching, but limitation in

8   handling on the right side and fingering on the right side and

9   feeling on the right side.  The report also reflects at page 85

10  that the plaintiff had difficulty zipping, buttoning, and tying,

11  arthritic changes in both hands and PIP joints.  The

12  Administrative Law Judge compared this to a later opinion, which

13  I will address in a moment, at pages 20 to 21 of the

14  Administrative Transcript, and found it to be less persuasive.

15           The second opinion that was referenced by the

16  Administrative Law Judge came from Dr. Perrotti.  It's in the

17  form of a prior administrative finding, also.  It is dated

18  December 20, 2021.  It appears at 88 to 102 of the

19  Administrative Transcript.  In his or her report, at page 99,

20  Dr. Perrotti finds that the plaintiff does not suffer from

21  manipulative limitations.

22           The Administrative Law Judge at 20 to 21 finds that

23  Dr. Perrotti's opinion is more persuasive than that of Dr. Seok

24  and cites reasons.  One, the rationale of Dr. Seok is not as

25  lengthy or detailed as that provided by Dr. Perrotti.  Two, Dr.

1   Seok's opinion is not consistent with all of the evidence in the
2   record.  Three, the records from the claimant's rheumatologist
3   were not available to Dr. Seok.  And four, the most recent of
4   these newly available records state that the claimant has no
5   joint tenderness or deformities on physical examination.
6            In my view, the rationale provided adequately
7   complies with the medical opinion regulations.  At page 100, Dr.
8   Perrotti has a healthy analysis.  Perhaps, as we have discussed,
9   it could have been clearer when it comes to the statement that
10  the claimant is able to zipper, button, and tie at the time of
11  the internal medicine CE examination, however, I don't think
12  that that rises to the level of an error or undermines the
13  reliance on Dr. Perrotti's opinion as providing substantial
14  evidence.  It is well accepted that prior administrative medical
15  findings can provide substantial evidence to support a
16  determination if supported, *Woytowicz v. Commissioner of Social*
17  *Security*, 2016 WL 6427787, from the Northern District of New
18  York, October 5, 2016, it is a report and recommendation that
19  was adopted at 2016 WL 6426385, Northern District of New York,
20  October 28, 2016.
21           There's also an opinion in the record from
22  consultative examiner Dr. Rita Figueroa, and that appears at
23  pages 464 to 468.  It was performed on August 9, 2021, and, of
24  course, both Dr. Seok and Dr. Perrotti had available to them
25  this report.  It does state a diagnosis of carpal tunnel

1  syndrome even though there's no indication in the record that I
2  could find that plaintiff's treating rheumatologist has ever
3  diagnosed plaintiff as suffering from carpal tunnel syndrome.
4          Interestingly, when it comes manipulation, which is
5  really what we're looking at, Dr. Figueroa states she will have
6  moderate limitations for activities requiring fine motor skills.
7  I'm not entirely sure that's not consistent with the residual
8  functional capacity finding, but assuming that it is, it is
9  inconsistent with Dr. Perrotti's report and opinions.  The
10 Administrative Law Judge reviewed Dr. Figueroa's opinions at
11 page 21 and found the opinion not to be persuasive.  The first
12 reason expressed is that it is given in terms of vague language.
13 Second, the moderate, marked, and severe limitations are not
14 well supported by her own physical examination findings and
15 noted several of those findings, including the grip strength,
16 which she found to be four out of five in plaintiff's right hand
17 and full in left hand.  The third reason cited is that the
18 description of plaintiff's limitations are inconsistent with
19 other substantial evidence, including activities of daily
20 living, treatment history, and positive response to treatments.
21 Again, I find no error in evaluation of Dr. Figueroa's report.
22         I do agree with the plaintiff's counsel that there
23 are manipulative limitations associated with the position of
24 appointment clerk.  Handling in DOT 237.367-10 is reported to be
25 frequent, meaning one-third to two-thirds at a time, and

1  fingering, occasionally up to one-third of the time.  I'll
2  assume that that is inconsistent with Dr. Figueroa, but it is
3  not inconsistent with Dr. Perrotti's report, and the
4  Administrative Law Judge found that plaintiff could meet these
5  requirements, and I find that that is supported by substantial
6  evidence.
7           To the extent that plaintiff is making a step two
8  argument, that is that the carpal tunnel syndrome should have
9  been found to be severe, I reject that.  And in any event, if it
10 was error, it is harmless.  The Administrative Law Judge
11 proceeded to step three of the sequential determination and
12 stated at page eight that all of plaintiff's impairments were
13 considered, both severe and nonsevere, in formulating the RFC.
14 So in conclusion, I find no error in failing to include
15 manipulative limitations in the RFC finding.
16          Turning to the analysis of plaintiff's subjective
17 reports, obviously, an Administrative Law Judge must take into
18 account plaintiff's subjective complaints in rendering the five
19 step disability analysis, 20 C.F.R. Section 404.1529(a).  When
20 examining the issue, the Administrative Law Judge applies two
21 steps:  First, assessing whether the claimant has medically
22 determinable impairments that could reasonably be expected to
23 produce the alleged symptoms, and then, if so, must evaluate the
24 intensity and persistence of those symptoms and the extent to
25 which they may limit a claimant's ability to perform

1  work-related activities.  This analysis is included in several

2  locations, including notably, Social Security Ruling 16-3p.

3           When making the analysis, the Administrative Law

4  Judge may consider certain relevant factors, including a

5  claimant's daily activities; the location, duration, frequency,

6  and intensity of any symptoms; any precipitating and aggravating

7  factors; the type, dosage, effectiveness, and side effects of

8  any medications taken; other treatment received; and other

9  measures taken to relieve the symptoms, 20 C.F.R. Section

10 404.1529(c)(3)(i) through (vi).  I note that if the plaintiff's

11 testimony concerning subjective complaints is rejected, an ALJ

12 must explicitly state the basis for doing so with sufficient

13 particularity to allow for meaningful judicial review, *Tome v.*

14 *Schweiker*, 724 F.2d 711, Second Circuit, 1984.

15          I also note, significantly, that an ALJ's assessment

16 of an individual's subjective complaints regarding his or her

17 pain and other symptoms is entitled to substantial deference by

18 a reviewing court, *Aponte v. Secretary of the Department of*

19 *Health and Human Services of the U.S.*, 728 F.2d 588, Second

20 Circuit 1984; *Shari L. v. Kijakazi*, 2022 WL 561563, Northern

21 District of New York, February 24, 2022, from Magistrate Judge

22 Baxter; *Edward J. v. Kijakazi*, 2022 WL 4536257, Northern

23 District of New York, September 28, 2022, from Magistrate Judge

24 Stewart.

25          In this case, plaintiff's claims were summarized by

1  the Administrative Law Judge at page 19 of his decision.  The
2  Administrative Law Judge then applied the two step analysis,
3  finding first that the medically determinable impairments
4  experienced by the plaintiff could reasonably be expected to
5  cause the symptoms alleged, but finding that the evidence did
6  not fully support plaintiff's allegations.  The Administrative
7  Law Judge outlined his reasoning for making that finding at
8  pages 19 and 20 and 22, citing not only the medical opinions,
9  including, significantly, Dr. Perrotti's opinion, but also
10 plaintiff's conservative treatments, her wide-ranging activities
11 of daily living, her treatment records, and clinical findings,
12 which did not substantiate the extent to which she claims she is
13 limited, diagnostic test results, and the exam findings of Dr.
14 Figueroa.
15         I find that there's no basis to set aside the
16 Administrative Law Judge's analysis of plaintiff's subjective
17 complaints.  In sum, I find no legal error was committed by the
18 Administrative Law Judge and that substantial evidence supports
19 the resulting determination, and I will therefore grant judgment
20 on the pleadings to the defendant and order dismissal of
21 plaintiff's complaint.
22         Thank you, both, for excellent presentations.  I hope
23 you have a good afternoon.
24         (Time noted:  2:31 p.m.)
25

```
 1
 2
 3
 4                    CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17            Dated this 10th day of September, 2024.
18
19            s/ Hannah F. Cavanaugh_____
20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21            Official U.S. Court Reporter
22
23
24
25
```